**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| COLE TADATOSHI MAJKOWSKI, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>CELSIUS HOLDINGS, INC., JOHN FIELDLY, JARROD LANGHANS, and TOBY DAVID,<br><br>Defendants. | **Case No.**<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Cole Tadatoshi Majkowski ("Plaintiff"), individually and on behalf of all others similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States ("U.S.") Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Celsius Holdings, Inc. ("Celsius" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial, additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1. This is a federal securities class action on behalf of a class consisting of all persons and entities other than Defendants that purchased or otherwise acquired Celsius securities between

February 21, 2025 and June 3, 2026, both dates inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

2. Celsius develops, processes, manufactures, markets, sells, and distributes products including energy drinks.

3. On April 1, 2025, Celsius closed the acquisition of Alani Nutrition LLC ("Alani Nu"), a maker of highly caffeinated energy drinks (described in greater detail below), for a net purchase price of $1.65 billion, comprised of cash and stock.

4. At all relevant times, Defendants represented that their products, including specifically Alani Nu drinks, were safe and healthy. For example, as of the time this Complaint was filed, Alani Nu's website continues to represent that "we use ingredients you can feel good about without compromising taste."

5. However, in contrast to Defendants' representations, Alani Nu drinks present serious risks due to the amount of caffeine they contain. A single 12-ounce Alani Nu drink contains 200 milligrams of caffeine, more than other popular energy drinks and more than twice the 100-milligram daily limit of caffeine recommended for teenagers and children aged 12 to 17, according to leading bodies of pediatricians and adolescent psychiatrists. The Center for Disease Control ("CDC") has stated that consumption of energy drinks in this age range can lead to cardiovascular issues ranging from irregular heartbeat to heart failure.

6. Alani Nu drinks have previously been the subject of regulatory action. In August of 2023, the Canadian Food Inspection Agency ("CFIA") warned Canadians "[d]o not consume, use, sell, serve, or distribute" Alani Nu energy drinks, stating that the drinks "are being recalled

from the marketplace due to various non-compliances related to caffeine content and labelling requirements." Specifically, Alani Nu's caffeine content exceeded Canada's legal limit of 180 milligrams for a single-serving energy drink.

7. Despite the risks that Alani Nu drinks present to consumers under the age of 18, Defendants at all relevant times have marketed these drinks to such consumers despite asserting their purported commitment not to do so. Alani Nu drinks are packaged in dynamic, bright colors, and Alani Nu actively recruits college students to join the "Alani Ambassadors" program and market Alani Nu products using their profiles on social media platforms such as Instagram and TikTok. As of the filing of this Complaint, the Alani Nu website even concedes that Defendants work with individuals whose social media audiences are comprised up to 25% of individuals under the age of 18.

8. While the labels on Alani Nu energy drinks state the amount of caffeine one can contains and generally state that they are "[n]ot recommended for consumption by children", they contain no similar cautionary language with respect to teenagers.

9. Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operations, and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Defendants' products failed to adequately disclose the cardiac risks of consuming Alani Nu products; (ii) by marketing Alani Nu drinks to consumers under the age of 18, the Company was marketing its products to individuals who were particularly susceptible to known health risks posed by those products; (iii) the foregoing created a non-speculative risk that Alani Nu consumers would suffer potentially fatal adverse health events; (iv) the foregoing, once revealed, was likely to have a

significant negative impact on the Company's business and reputation; and (v) as a result, Defendants' public statements were materially false and misleading at all relevant times.

10. The truth began to emerge on April 9, 2026, when NBC News and local news outlet MyRGV (Rio Grande Valley) reported that the family of 17-year old Texas cheerleader Larissa Rodriguez had filed a wrongful death lawsuit in Hidalgo County District Court against Glazer's Beer and Beverage, LLC ("Glazer's") and Glazer's Beer and Beverage of Texas, LLC ("Glazer's Texas"), two distributors of Alani Nu. The family alleged that Rodriguez died from an enlarged heart caused by drinking Alani Nu energy drinks and that the drinks "had inadequate warnings about the serious cardiac risks" of drinking Alani Nu. According to NBC News, Celsius stated in response, *inter alia*, "our policy is not to market or sample to anyone under 18".

11. On this news, Celsius's stock price fell $1.52 per share, or 4.18%, to close at $34.86 on April 10, 2026.

12. Then, on June 4, 2026, Texas Attorney General Ken Paxton ("Paxton") announced an investigation into Celsius over concerns that its high-caffeine energy drinks are being marketed to children and teens. Per Attorney General Paxton's announcement, the investigation will specifically examine whether Celsius and its Alani Nu subsidiary had violated the Texas Deceptive Trade Practices Act by misrepresenting the safety of their products.

13. On news of the investigation, Celsius's stock price fell $2.26 per share, or 7.53%, to close at $27.75 per share on June 4, 2026.

14. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

15. The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

16. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act.

17. Venue is proper in this District pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b). Celsius is headquartered in this District, Defendants conduct business in this District, and a significant portion of Defendants' actions took place within this District.

18. In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

## PARTIES

19. Plaintiff, as set forth in the attached Certification, acquired Celsius securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

20. Defendant Celsius is a Nevada corporation with principal executive offices located at 2381 NW Executive Center Drive, Boca Raton, Florida 33431. The Company's common stock trades in an efficient market on the Nasdaq Capital Market ("NASDAQ") under the ticker symbol "CELH".

21. Defendant John Fieldly ("Fieldly") served as Celsius's Chief Executive Officer at all relevant times.

22. Defendant Jarrod Langhans ("Langhans") served as Celsius's Chief Financial Officer at all relevant times.

23. Defendant Toby David ("David") served as Celsius's Chief of Staff at all relevant times.

24. Defendants Fieldly, Langhans, and David are collectively referred to herein as the "Individual Defendants".

25. The Individual Defendants possessed the power and authority to control the contents of Celsius's SEC filings, press releases, and other market communications. The Individual Defendants were provided with copies of Celsius's SEC filings and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or to cause them to be corrected. Because of their positions with Celsius, and their access to material information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public, and that the positive representations being made were then materially false and misleading. The Individual Defendants are liable for the false statements and omissions pleaded herein.

26. Celsius and the Individual Defendants are collectively referred to herein as "Defendants".

## SUBSTANTIVE ALLEGATIONS

### Background

27. Celsius develops, processes, manufactures, markets, sells, and distributes products including energy drinks.

28. On April 1, 2025, Celsius closed the acquisition of Alani Nu, a maker of highly caffeinated energy drinks (described in greater detail below), for a net purchase price of $1.65 billion, comprised of cash and stock.

29. At all relevant times, Defendants represented that their products, including specifically Alani Nu drinks, were safe and healthy. For example, as of the time this Complaint was filed, Alani Nu's website continues to represent that "we use ingredients you can feel good about without compromising taste."

30. However, in contrast to Defendants' representations, Alani Nu drinks present serious risks due to the amount of caffeine they contain. A single 12-ounce Alani Nu drink contains 200 milligrams of caffeine, more than other popular energy drinks such as Red Bull (80 milligrams) and Monster (160 milligrams). This is more than twice the 100-milligram daily limit of caffeine recommended for teenagers and children aged 12 to 17, according to the American Academy of Pediatrics ("AAP") and American Academy of Child and Adolescent Psychiatry ("AACAP"). The AAP and AACAP each recommend that individuals aged 12 to 18 avoid energy drinks altogether. The CDC has stated that consumption of energy drinks in this age range can lead to cardiovascular issues ranging from irregular heartbeat to heart failure.

31. Alani Nu drinks have previously been the subject of regulatory action. In August of 2023, the CFIA warned Canadians "[d]o not consume, use, sell, serve, or distribute" Alani Nu energy drinks, stating that the drinks "are being recalled from the marketplace due to various non-

compliances related to caffeine content and labelling requirements." Specifically, Alani Nu's caffeine content exceeded Canada's legal limit of 180 milligrams for a single-serving energy drink.

32. Despite the risks that Alani Nu drinks present to consumers under the age of 18, Defendants at all relevant times have marketed these drinks to such consumers despite asserting their purported commitment not to do so. For example, Alani Nu drinks are packaged in dynamic, bright colors, as depicted below.




*Figure 1: Alani Nu energy drinks*

Moreover, Alani Nu actively recruits college students to join the "Alani Ambassadors" program and market Alani Nu products using their profiles on social media platforms such as Instagram and TikTok. As of the filing of this Complaint, the Alani Nu website even concedes that Defendants work with individuals whose social media audiences are comprised up to 25% of individuals under the age of 18. While the Alani Nu website claims that "[o]ur social media audience settings are configured to reach an 18+ audience for Alani Nu Energy Drink content", it makes no such commitment with respect to the Alani Ambassadors' social media audience settings.




*Figure 2: Media advertising the Alani Ambassadors program*

33. Defendants' marketing even suggests that consumers consider mixing multiple Alani Nu drinks together to form their own bespoke energy drink, as depicted below.




*Figure 3: Alani Nu marketing depicting the combination of multiple energy drinks*

Moreover, on the Frequently Asked Questions page of Alani Nu's website, Defendants affirm that their visitors "can mix a portion" of certain Alani Nu drinks together "to create your own witchy

potion", and only cautions them "not [to] exceed 400 [milligrams] of caffeine per day" – an amount significantly higher than the 100 mg recommend by AAP and AACAP:

> [Q:] Can I mix witch's brew, ruby apple, and voodoo vanilla together? [A:] Yes, you can mix a portion of each of these flavors together to create your own witchy potion. However, please be mindful of your caffeine consumption, as the FDA recommends you do not exceed 400mg of caffeine per day.

34. While the labels on Alani Nu energy drinks state the amount of caffeine one can contains and generally states that they are "[n]ot recommended for consumption by children", they contain no similar cautionary language with respect to teenagers.

**Materially False and Misleading Statements**

35. The Class Period begins on February 21, 2025, the day after Celsius issued press releases announcing its agreement to acquire Alani Nu and its financial results for the quarter and year ended December 31, 2024, and held a conference call to discuss the same (the "FY 2024 Earnings Call"). In its press release announcing the Alani Nu acquisition, Celsius claimed that the acquisition would "creat[e] a leading ***better-for-you, functional lifestyle*** platform", stating *inter alia*:

> Celsius . . . today announced that it has entered into a definitive agreement to acquire Alani Nutrition LLC ("Alani Nu") for $1.8 billion including $150 million in tax assets for a net purchase price of $1.65 billion, comprising a mix of cash and stock. The transaction will combine two growing, scaled brands in the U.S. energy drink category, creating a leading ***better-for-you, functional lifestyle*** platform that is well positioned to capitalize on the growing consumer preference for zero-sugar alternatives.[1]

36. This press release also quoted Defendant Fieldly as lauding Alani Nu's "strong community of supporters and fans" and touting that "Alani Nu's functional products . . . help more people achieve their wellness goals", stating:

[1] All emphases herein are added unless otherwise indicated.

> John Fieldly, Chairman and CEO of Celsius, said, "Celsius is at a defining moment in the better-for-you, functional lifestyle products movement, and we are thrilled to welcome Alani Nu to the Celsius family. We have deep respect for the strong community of supporters and fans Alani Nu has developed and the authentic brand and partnerships they have formed. ***Together, we expect to broaden the availability of Alani Nu's functional products to help more people achieve their wellness goals*** with great-tasting, functional product options at more moments throughout their lives."

37. During the FY 2024 Earnings Call, Defendant Fieldly discussed Celsius's acquisition of Alani Nu, lauding Alani Nu's "affinity among key growing consumer segments", without disclosing that these consumer segments included teenagers, for whom consumption of Alani Nu's highly caffeinated beverages was unsafe. Defendant Fieldly further represented that the acquisition of Alani Nu would "enhance the Celsius platform with a complementary profitable, ***better-for-you lifestyle*** energy brand focused on a differentiated consumer segment", given Alani Nu's status as a "growing female-focused brand . . . for a growing community of Millenials and Gen Z consumers". Defendant Fieldly specifically stated, in relevant part:

> Earlier today, Celsius reported its fourth quarter and full-year 2024 financial results and announced that it has entered into a definitive agreement to acquire Alani Nu, a leading brand in the U.S. energy drink category and ***one we greatly admire for its outstanding portfolio of functional products and a strong brand affinity among key growing consumer segments***. . . . The acquisition represents a unique opportunity to enhance the Celsius platform with ***a complementary profitable, better-for-you lifestyle energy brand focused on a differentiated consumer segment within the category***. ***Alani Nu is a growing female-focused brand that delivers functional, great-tasting wellness products for a growing community of Millennials and Gen Z consumers***. ***Alani Nu stands out for its authentic brand voice, bright and playful flavors, and unique connections with its community of consumers***. They combine functional benefits with a fun, approachable personality, making wellness aspirational, yet accessible.

Defendant Fieldly's reference to "Gen Z consumers" included individuals under the age of 18. As defined by the Library of Congress and the Pew Research Center, Gen Z includes individuals born between 1997 and 2012.

38. Defendant Fieldly made clear during the Question and Answer portion of the FY 2024 Earnings Call that Alani Nu's "unique consumer base" consisted of "younger female consumer[s]". Defendant Fieldly further stated that Alani Nu "revolves around health", misleadingly suggesting that Alani Nu drinks are healthy to consume, stating *inter alia*:

> We're excited about the addition of Alani Nu into our portfolio at Celsius Holdings. The Alani Nu brand has a very unique consumer base, which is incremental to our overall portfolio and complementary to Celsius. It's targeting a younger female consumer that really is aspirational. It's also accessible, and ***it revolves around health and wellness and fitness.*** The social media, as an example, has about a 92% female following.

39. On March 3, 2025, Celsius filed with the SEC an annual report on Form 10-K reporting its financial results for the quarter and year ended December 31, 2024. In this annual report, Celsius represented that Defendants were was "committed" to "maintaining high standards in product quality, engaging in responsible marketing practices, and actively managing public relations", stating *inter alia*:

> *Brand Reputation and Consumer Trust Risks* - Our success relies on maintaining a strong brand reputation and consumer trust. In the fast-paced consumer goods industry, public perception can shift rapidly due to various factors, including product quality issues, negative publicity, social media trends, and changing consumer preferences. A tarnished brand image, whether through real or perceived issues, can result in decreased customer loyalty, reduced sales, and ultimately, a negative impact on our financial performance.
>
> ***To mitigate these risks, we are committed to maintaining high standards in product quality, engaging in responsible marketing practices, and actively managing public relations. We monitor consumer feedback continuously and respond swiftly to any concerns***. Our management team is equipped to handle potential public relations challenges proactively to safeguard our brand image. However, despite these efforts, there is always a risk of unforeseen events that could harm our brand reputation.

40. On May 6, 2025, Celsius filed with the SEC a quarterly report on Form 10-Q reporting its financial results for the quarter ended March 31, 2025. In that quarterly report, Celsius

stated that Alani Nu maintained a "strong following among Gen Z and female consumers", without specifying that such consumers are at least 18 years old, stating *inter alia*:

> Alani Nu expands our reach beyond energy into wellness and nutrition with a product range spanning energy drinks, pre-workout formulas, protein beverages and supplements. ***With a strong following among Gen Z and female consumers***, Alani Nu adds depth to our innovation pipeline and provides meaningful opportunities for domestic and global expansion.

Celsius's reference to "Gen Z . . . consumers" necessarily included individuals under 18 years old, given that Gen Z includes individuals born between 1997 and 2012, as alleged *supra* ¶ 37.

41. On August 7, 2025, Celsius issued a press release announcing its financial results for the quarter ended June 30, 2025, and held a conference call to discuss the same (the "Q2 2025 Earnings Call"). In its press release, Celsius noted the growth of Alani Nu sales, which increased 129% year-over-year for the quarter, and attributed this performance to Alani Nu's "resonance with younger . . . energy customers", stating *inter alia*: "Alani Nu brand retail sales increased 129% year over year for the 13-week period ended June 29, 2025, and 39% sequentially, marking one of the fastest accelerations in the category and underscoring the brand's resonance with younger, more diverse energy consumers."

42. During the Q2 2025 Earnings Call, Defendant Fieldly similarly attributed Alani Nu's performance to its "younger", "Gen Z" customer base, stating *inter alia*:

> ***Consumers today are making more intentional beverage choices reaching for functional, better-for-you products that fit their active and wellness lifestyles.*** The shift to zero sugar, functional energy drinks is fueling one of the fastest-growing segments in beverage, and Celsius Holdings is defining it. ***Recent industry reports pointed to double-digit category growth in 2025, with momentum coming from new to category consumers, namely females, Gen Z*** and the growing number of consumers who are switching to functional energy drinks from other energy sources like RTD cold coffee among them.
>
> ***Younger, more diverse consumers are now leading the growth and brands that resonate with Gen Z and women like Celsius and Alani Nu are gaining share and building loyalty***. The Celsius Holdings portfolio has reached a 43% household

> penetration with the Celsius brand at 34% and the ***Alani Nu brand at 22% household penetration with repeat rates over 65%***.

43. Also during the Q2 Earnings Call, Defendant Fieldly spoke to Defendants' "invest[ments] in brand awareness", explaining that Alani Nu's increased market penetration flowed from "influencer engagement and lifestyle partnership", in an apparent reference to efforts including Alani Nu's Ambassador Program, stating *inter alia*:

> We continue to invest in brand awareness, touching more people in more places, more often, focusing on driving trial and loyalty. . . . The Celsius brand also activated a key cultural moments like F1 Miami, the CMA Fest and the Breakaway Festival. ***While Alani Nu expanded its reach through influencer engagement and lifestyle partnerships***. . . . ***Celsius and Alani Nu brands are*** driving growth, gaining share, ***staying relevant with the next generation of modern energy drinkers***.

44. On August 8, 2025, Celsius filed with the SEC a quarterly report on Form 10-Q reporting its financial results for the quarter ended June 30, 2025. In that quarterly report, Celsius again stated that Alani Nu maintained a "strong following among Gen Z and female consumers", without specifying that such consumers are at least 18 years old, just as alleged *supra* ¶ 40. Celsius's reference to "Gen Z . . . consumers" necessarily included individuals under 18 years old, given that Gen Z includes individuals born between 1997 and 2012, as alleged *supra* ¶¶ 37, 40.

45. On August 29, 2025, Celsius issued a press release entitled "Celsius Holdings and PepsiCo Strengthen Long-Term Strategic Partnership". In this press release, Celsius announced that its Alani Nu products would move through PepsiCo Inc.'s ("PepsiCo") distribution system in the U.S. and Canada, and that PepsiCo had acquired $585 million of newly issued convertible 5% preferred stock. Celsius also announced that it had acquired from PepsiCo the Rockstar Energy brand in the U.S. and Canada, and that the Company would become PepsiCo's "strategic energy lead in the U.S., managing the CELSIUS®, Alani Nu and Rockstar Energy brands".

46. Also in this press release, Celsius specifically connected Alani Nu's "appeal[] to new female consumers focused on fitness and lifestyle" to its strategic value for PepsiCo, stating *inter alia*: "As the fastest growing brand in modern energy, ***Alani Nu complements PepsiCo's energy distribution portfolio, appealing to new female consumers focused on fitness and lifestyle***.

47. On November 7, 2025, Celsius filed with the SEC a quarterly report on Form 10-Q reporting its financial results for the quarter ended September 30, 2025. In that quarterly report, Celsius again stated that Alani Nu maintained a "strong following among Gen Z and female consumers", without specifying that such consumers are at least 18 years old, just as alleged *supra* ¶¶ 40, 44. Celsius's reference to "Gen Z . . . consumers" necessarily included individuals under 18 years old, given that Gen Z includes individuals born between 1997 and 2012, , as alleged *supra* ¶¶ 37, 40, 44.

48. On November 12, 2025, Defendant David appeared on behalf of Celsius at J.P. Morgan's U.S. Opportunities Forum. During that appearance, Defendant David again affirmed that Celsius's partnership with Pepsi presented "a big opportunity" for Alani Nu grow its sales within food and service, because it includes colleges and universities, stating *inter alia*:

> ***Now as far as Alani Nu, their big opportunity is across the board***, but I'd start with convenience stores. . . . On top of that, ***you've got food [and] service***, which is negligible for them for Alani right now as it was for Celsius previously. Food [and] service typically falls between 10% and 13% of our revenue with Pepsi. ***So that's going to be a big opportunity. College and University falls within what we quantify as foodservice. So that's an opportunity***.

49. On March 2, 2026, Celsius filed with the SEC an annual report on Form 10-K reporting its financial results for the quarter and year ended December 31, 2025. Again, Celsius stated that Alani Nu maintained a "strong following among Gen Z and female consumers", without specifying that such consumers are at least 18 years old, just as alleged *supra* ¶¶ 40, 44, 47.

Celsius's reference to "Gen Z . . . consumers" necessarily included individuals under 18 years old, given that Gen Z includes individuals born between 1997 and 2012, as alleged *supra* ¶¶ 37, 40, 44, 47.

50. Also in this annual report, Celsius represented that Defendants were "committed" to "maintaining high standards in product quality, engaging in responsible marketing practices, and actively managing public relations", stating *inter alia*:

> *Brand Reputation and Consumer Trust Risks* - Our success relies on maintaining a strong brand reputation and consumer trust. In the fast-paced consumer packaged goods industry, public perception can shift rapidly due to various factors, including product quality issues, negative publicity, social media trends and changing consumer preferences. A tarnished brand image, whether through real or perceived issues, can result in decreased customer loyalty, reduced sales and ultimately, a negative impact on our financial performance.
>
> ***To mitigate these risks, we have committed to maintaining high standards in product quality, engaging in responsible marketing practices and actively managing public relations. We continuously monitor consumer feedback and respond swiftly to any concerns***. Our management team is equipped to handle potential public relations challenges proactively to safeguard our brand image. However, despite these efforts, there is always a risk of unforeseen events that could harm our brand reputation.

51. The statements referenced in ¶¶ 35–44, 46–50 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Defendants' products failed to adequately disclose the cardiac risks of consuming Alani Nu products; (ii) by marketing Alani Nu drinks to consumers under the age of 18, the Company was marketing its products to individuals who were particularly susceptible to known health risks posed by those products; (iii) the foregoing created a non-speculative risk that Alani Nu consumers would suffer potentially fatal adverse health events; (iv) the foregoing, once revealed, was likely to have a

significant negative impact on the Company's business and reputation; and (v) as a result, Defendants' public statements were materially false and misleading at all relevant times.

**The Truth Begins to Emerge**

52. The truth began to emerge on April 9, 2026, when NBC News and local news outlet MyRGV each reported that one day earlier, the family of 17-year old Texas cheerleader Larissa Rodriguez had filed a wrongful death lawsuit in Hidalgo County District Court against Glazer's and Glazer's Texas, two distributors of Alani Nu. The family alleged that Rodriguez died from an enlarged heart caused by drinking Alani Nu energy drinks and that the drinks "had inadequate warnings about the serious cardiac risks" of drinking Alani Nu.

53. On this news, Celsius's stock price fell $1.52 per share, or 4.18%, to close at $34.86 per share on April 10, 2026.

54. Notwithstanding the foregoing disclosures and resulting drop in Celsius's share price, Celsius's stock continued to trade at artificially inflated prices due to Defendants continued false and misleading statements about the risks of consuming Alani Nu energy drinks and Defendants' efforts to market them to individuals under 18 years old.

55. For example, in response to NBC News's reporting referenced above, Celsius affirmed its purported commitment to product safety and represented it does not "market or sample to anyone under 18". In its article, NBC News quoted Celsius's' statement, stating *inter alia*:

> Celsius Inc., which owns Alani Nu, said in a statement that it is "saddened by this loss, and our thoughts are with the family. ***We take product safety seriously and believe consumers should have clear information about what they are drinking***."
>
> "Alani Nu energy drinks disclose 200mg of caffeine on the can, and the label states the product is not recommended for children, people sensitive to caffeine, pregnant women, or women who are nursing," the statement said. "***Our products comply with applicable federal labeling requirements, and our policy is not to market or sample to anyone under 18, consistent with those label warnings***."

56. On May 7, 2026, Celsius filed with the SEC a quarterly report on Form 10-Q reporting its financial results for the quarter ended March 31, 2026. In that quarterly report, Celsius addressed the wrongful death action filed by the family of Larissa Rodriguez, disclosing that it no longer distributed Alani Nu products through the distributors named as defendants and asserting that plaintiff's claims "are without merit", stating *inter alia*:

> "On April 8, 2026, a wrongful-death action was filed in the District Court of Hidalgo County, Texas by the parents of Larissa Rodriguez against Glazer's Beer and Beverage, LLC and Glazer's Beer and Beverage of Texas, LLC, a former local distributor of Alani Nu products. The Company is not currently named as a defendant, but the matter relates to Alani Nu products and the Company has an obligation to indemnify the named defendants for a loss arising out of any actual or alleged injury or damages suffered in connection with the consumption or purchase of Alani Nu. The Company has provided notice of the matter to its insurers. ***The Company believes that the claims are without merit***.

57. Also in this quarterly report, Celsius asserted that Alani Nu's "following" consisted of "Gen Z and female consumers[] who are 18 years and older", departing from similar statements in other quarterly and annual reports filed with the SEC during the Class Period, which did not clarify that such consumers were at least 18 years of age, and stating *inter alia*:

> Alani Nu expands our portfolio further into wellness and nutrition, broadening our reach across consumers, occasions and product formats, with a product range spanning energy drinks, pre-workout formulas, protein beverages and supplements. ***With a strong following among Gen Z and female consumers, who are 18 years and older***, ***Alani Nu enhances our ability to connect with key consumer segments***, strengthens our innovation pipeline and supports continued expansion.

58. The statements referenced in ¶¶ 55–57 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Defendants' products failed to adequately disclose the cardiac risks of consuming Alani Nu products; (ii) by marketing Alani Nu drinks to consumers under the age of 18, the Company was marketing its

products to individuals who were particularly susceptible to known health risks posed by those products; (iii) the foregoing created a non-speculative risk that Alani Nu consumers would suffer potentially fatal adverse health events; (iv) the foregoing, once revealed, was likely to have a significant negative impact on the Company's business and reputation; and (v) as a result, Defendants' public statements were materially false and misleading at all relevant times.

**<u>The Truth Continues to Emerge</u>**

59. On June 4, 2026, Texas Attorney General Paxton announced an investigation into Celsius over concerns that its high-caffeine energy drinks are being marketed to children and teens. Per Attorney General Paxton's announcement, the investigation will specifically examine whether Celsius and its subsidiary Alani Nu, maker of the highly caffeinated Alani Nu energy drink, had violated the Texas Deceptive Trade Practices Act by misrepresenting the safety of their products. When announcing the investigation, Attorney General Paxton noted that Alani Nu "employs colorful packaging, playful design elements and youth-oriented branding strategies that appeal directly to younger consumers, raising serious questions about whether the company is deliberately marketing a potentially harmful product to an at-risk population."

60. On news of the investigation, Celsius's stock price fell $2.26 per share, or 7.53%, to close at $27.75 per share on June 4, 2026.

61. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

**<u>Regulation S-K Item 105</u>**

62. Throughout the Class Period, Celsius's' periodic financial filings were required to disclose the adverse facts and circumstances detailed above under applicable SEC rules and

regulations. Specifically, Item 105 of SEC Regulation S-K, 17 CFR § 229.105 ("Item 105"), required Celsius to "provide under the caption 'Risk Factors' a discussion of the material factors that make an investment in the [Company] or offering speculative or risky" and "[c]oncisely explain how each risk affects the [Company] or the securities being offered." Defendants failed to disclose, *inter alia*, that consumption of Alani Nu drinks presented cardiac risks to certain consumer segments, including individuals under 18 years old, and that they marketed Alani Nu energy drinks to individuals under 18 years old, who were particularly susceptible to those cardiac risks. Defendants' failure to disclose the foregoing issues violated Item 105 because these issues represented material factors that made an investment in the Company speculative or risky.

## SCIENTER ALLEGATIONS

63. During the Class Period, Defendants had both the motive and opportunity to commit fraud. ***During the Class Period, the Individual Defendants enriched themselves by selling 475,798 shares of Celsius common stock for over $22.2 million in proceeds***. Defendant Fieldly sold 436,550 shares of Celsius common stock, collecting proceeds of approximately $20.3 million, while Defendant Langhans sold 39,248 shares of Celsius common stock, collecting proceeds of approximately $1.9 million.

64. They also had actual knowledge of the misleading nature of the statements they made, or acted in reckless disregard of the true information known to them at the time. Defendants repeatedly represented that they "monitor consumer feedback and respond swiftly to any concerns" when discussing their purportedly "high standards in product quality" and "responsible marketing practices", as alleged *supra* ¶¶ 39, 50, and that they understood Alani Nu products appealed to "younger . . . consumers", "Gen Z[,] and women", as alleged *supra* ¶¶ 38, 41–44, 46–47, 49. In so doing, Defendants participated in a scheme to defraud and committed acts, practices, and

participated in a course of business that operated as a fraud or deceit on purchasers of the Company's securities during the Class Period.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

65. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Celsius securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures. Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

66. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Celsius securities were actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Celsius or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

67. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

68. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

69. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;
- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Celsius;
- whether the Individual Defendants caused Celsius to issue false and misleading financial statements during the Class Period;
- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;
- whether the prices of Celsius securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and
- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

70. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

71. Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;
- the omissions and misrepresentations were material;
- Celsius securities are traded in an efficient market;
- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;
- the Company traded on the NASDAQ and was covered by multiple analysts;
- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and
- Plaintiff and members of the Class purchased, acquired and/or sold Celsius securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

72. Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

73. Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

**COUNT I**

**(Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)**

74. Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

75. This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

76. During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities. Such scheme was intended to, and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Celsius securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Celsius securities and options at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

77. Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for Celsius securities. Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Celsius's finances and business prospects.

78. By virtue of their positions at Celsius, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose

such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants. Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth. In addition, each Defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

79. Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control. As the senior managers and/or directors of Celsius, the Individual Defendants had knowledge of the details of Celsius's internal affairs.

80. The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein. Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Celsius. As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Celsius's businesses, operations, future financial condition and future prospects. As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Celsius securities was artificially inflated throughout the Class Period. In ignorance of the adverse facts concerning Celsius's business and financial condition which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired Celsius securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by Defendants, and were damaged thereby.

81. During the Class Period, Celsius securities were traded on an active and efficient market. Plaintiff and the other members of the Class, relying on the materially false and misleading

statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Celsius securities at prices artificially inflated by Defendants' wrongful conduct. Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid. At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Celsius securities was substantially lower than the prices paid by Plaintiff and the other members of the Class. The market price of Celsius securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

82. By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

83. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

**(Violations of Section 20(a) of the Exchange Act Against the Individual Defendants)**

84. Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

85. During the Class Period, the Individual Defendants participated in the operation and management of Celsius, and conducted and participated, directly and indirectly, in the conduct

of Celsius's business affairs. Because of their senior positions, they knew the adverse non-public information about Celsius's misstatement of income and expenses and false financial statements.

86. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Celsius's financial condition and results of operations, and to correct promptly any public statements issued by Celsius which had become materially false or misleading.

87. Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Celsius disseminated in the marketplace during the Class Period concerning Celsius's results of operations. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Celsius to engage in the wrongful acts complained of herein. The Individual Defendants, therefore, were "controlling persons" of Celsius within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Celsius securities.

88. Each of the Individual Defendants, therefore, acted as a controlling person of Celsius. By reason of their senior management positions and/or being directors of Celsius, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Celsius to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of Celsius and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

89. By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Celsius.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A. Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B. Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C. Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D. Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated: September 4, 2026

Respectfully submitted,

*_/s/ Nathan C. Zipperian_*
Nathan C. Zipperian
Jayne A. Goldstein
MILLER SHAH LLP
1395 Brickell Avenue, Suite 827
Miami, FL 33131
Telephone: (954) 515-0123
Facsimile: (866) 300-7367
nczipperian@millershah.com
jagoldstein@millershah.com

POMERANTZ LLP
Jeremy A. Lieberman*
J. Alexander Hood II*
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
jalieberman@pomlaw.com
ahood@pomlaw.com

*Attorneys for Plaintiff*

*Pro hac vice* applications forthcoming

**CERTIFICATION PURSUANT**
**TO FEDERAL SECURITIES LAWS**

1. I, Cole Tadatoshi Majkowski, make this declaration pursuant to Section 27(a)(2) of the Securities Act of 1933 ("Securities Act") and/or Section 21D(a)(2) of the Securities Exchange Act of 1934 ("Exchange Act") as amended by the Private Securities Litigation Reform Act of 1995.

2. I have reviewed a Complaint against Celsius Holdings, Inc ("Celsius") and authorize the filing of a comparable complaint on my behalf.

3. I did not purchase or acquire Celsius securities at the direction of plaintiffs' counsel or in order to participate in any private action arising under the Securities Act or Exchange Act.

4. I am willing to serve as a representative party on behalf of a Class of investors who purchased or otherwise acquired Celsius securities during the Class Period as specified in the Complaint, including providing testimony at deposition and trial, if necessary. I understand that the Court has the authority to select the most adequate lead plaintiff in this action.

5. The attached sheet lists all of my transactions in Celsius securities during the Class Period as specified in the Complaint.

6. During the three-year period preceding the date on which this Certification is signed, I have not served or sought to serve as a representative party on behalf of a class under the federal securities laws.

7. I agree not to accept any payment for serving as a representative party on behalf of the Class as set forth in the Complaint, beyond my *pro rata* share of any recovery, except such reasonable costs and expenses directly relating to the representation of the class as ordered or approved by the Court.

8. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

**Executed** 8/11/2026
**(Date)**

Signed by:
Cole Majkowski
3C5367335A234DA...
**(Signature)**

Cole Tadatoshi Majkowski
**(Type or Print Name)**

# EXHIBIT A

**Celsius Holdings, Inc. (CELH)** **Cole Tadatoshi Majkowski**

**List of Purchases/Acquisitions and Sales**

| Transaction Type | Date | Number of Shares/Unit | Price Per Share/Unit |
|---|---|---|---|
| Purchase/Acquisition | 11/14/2025 | 50 | $43.0100 |